Si-iauck, C. J.
On the 5th day of September, 1904, the commissioners by resolution entered on their journal, authorized the Traction Company to construct and operate its road over these highways. The resolution contemplated grade crossings and it contained the express provision that over or under crossings should not be required. On the 8th of February, 1905, they passed another resolution to rescind that by which such permission had been conferred, reciting in the preamble to the latter resolution that the for *559 mer had been passed through mistake and misunderstanding, and that the crossings would be extremely dangerous to the traveling public. To the latter resolution there was appended an order that the company should not cross any highway in Ross County except in the manner provided in the original franchise, or in such manner as might be thereafter granted. In the meantime the company had gone forward in acquiring its right of way and with the construction of its road; and it is not contended that the latter resolution is effective to revoke any authority which had been effectively conferred by the former. The question presented, as counsel agree, is whether the company is within the act of April 25, 1904, 97 O. L., 546, its construction being for the operation of its cars by electricity conducted upon a third rail, and its cars being in fact so operated. The scope of the act is indicated by its first section, which provides that “except as in this act elsewhere provided, all crossings hereinafter constructed, whether of highways by railroads or of railroads by highways, shall be0 above or below the grade thereof.” Other sections of the statute provide the method by which crossings may be authorized at grade by the Court of Common Pleas.
Obviously the word “railroad” needs not to be used in a strained or unnatural sense to include an interurban road operated by electricity. And in this connection counsel for the plaintiffs naturally advert to the decisions in which manifest resemblances have been recognized between the companies which depend for the movement of their cars upon their own tractive friction and those which for that purpose employ locomotives *560 for their tractive power. It is, however, an approximately correct generalization to say that the legal likenesses have been found in the relations which the different companies as common carriers of passengers and freight sustain to . their patrons and their relations to their employes. And it remains to inquire whether in the provisions which the legislature has made for the safety of those who are participating in the common use of crossings and highways and the tracks of common carriers it has preserved a distinction on account of the motive power or the tractive methods employed by the carriers. A substantial basis for such distinction is found in the greater weight and momentum of trains drawn by locomotives in comparison with cars for whose propulsion reliance is had upon the tractive friction produced by their own weight, and the promptness with which the latter may be stopped. We may with propriety advert to the substantial character of this difference, but only as an aid in determining whether the legislature has thought it sufficient to justify the distinction in question. The amendments of varioüs statutes upon the subject of railroads and street railroads which are cited in the brief of counsel for the defendant show that in the opinion of the legislature the former term does not include roads of the latter description, and that other terms must be employed to subject roads of different classes to the same statutory provisions.
The case of The Massillon Bridge Co. et al. v. The Cambria Iron Co., 59 Ohio St., 179, involved the interpretation of Sections 3207 and 3208, Revised Statutes, relating to the construction of *561 railroads. It was there held upon considerations which appear to be as applicable here that the word “railroad” does not include street railroads, and by the judgment in the case an interurban' road was regarded as a street railroad within the legislative meaning. That case was decided November 29, 1898, and by its subsequent acts the legislature has indicated its satisfaction with that interpretation. Even the act here relied on was passed at a later date, employing terms which according to that interpretation would not apply to the defendant. It is admitted that existing legislation authorizes the commissioners of a county to permit “street railroads outside of municipalities” to run upon and along highways. From the exercise of this authority it would result that the Traction Company might enter upon these highways from one side and at a point more or less remote leave them upon the other. No considerations appear which would justify the conclusion that the legislature intended that to such roads as the- defendant grade crossings, if oblique, should be permitted, and if direct forbidden.

Judgment affirmed.

Crew, Summers and Davis, JJ., concur. Spear, J., did not participate.